UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES H. CABLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:09-CV-442 |
| | ) | (PHILLIPS/GUYTON) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 and 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 and 16]. Plaintiff James H. Cable seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On May 1, 2007, the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began March 16, 2006. [Tr. 10]. After his application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On December 16, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 19-31]. On February 27, 2009, the ALJ found that the Plaintiff was not disabled. [Tr. 10-18]. The Appeals Council denied the Plaintiff's

request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since March 16, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*)

3. The claimant has the following severe impairments: degenerative disc disease with radiculopathy, pitting edema, and illiteracy (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with no more than occasional postural activities. He has poor ability for reading and writing.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 1, 1959 and was 46 years old, which is defined as a "younger individual", on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant is illiterate and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social

> Security Ruling 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 12-18].

## II.   DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant

4

evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard.

5

See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

**IV.   ANALYSIS**

On appeal, Plaintiff argues that the ALJ's disability determination is not supported by substantial evidence. The Plaintiff contends the ALJ erred in her residual functional capacity determination, because she did not address the Plaintiff's allegation that he must elevate his legs two to five hours per day, to alleviate his edema. [Doc. 14 at 1]. The Commissioner, in response, contends that the Plaintiff's edema was properly addressed and that substantial evidence supports the ALJ's disability determination. [Doc. 16 at 1].

The Plaintiff worked for a high-pressure water cleaning company for approximately twenty-five years, before his lower back was injured in March of 2006. [Tr. 23-24, 117, 211]. The majority of the medical evidence in the record addresses the Plaintiff's back condition, but the Plaintiff has raised only one allegation of error, which relates to the Plaintiff's edema, not his back pain.[1]

In July 2006, the Plaintiff was seen by David A. Beeks, M.D., with complaints of low back pain. [Tr. 209]. While Dr. Beeks treated the Plaintiff primarily for his back pain, Dr. Beeks also observed and diagnosed the Plaintiff's edema, and he was the only physician in the record to see the Plaintiff on more than one occasion. In notes from a visit on August 11, 2006, Dr. Beeks noted that

---

[1] The ALJ and the parties' summaries of the Plaintiff's medical history explain the Plaintiff's back impairments and conditions. The Court has reviewed these documents along with the Plaintiff's medical records, but because the only issue now before the Court relates to the Plaintiff's edema, the Court declines to summarize the Plaintiff's history of back impairments.

on his last visit the Plaintiff had lower extremity swelling. [Tr. 208]. Dr. Beeks noted that the Plaintiff had "2+ pitting edema below the legs" but found that the Plaintiff was ambulatory without assistive devices. [Tr. 208]. On September 15, 2006, Dr. Beeks found that the edema was "somewhat improved although it [was] still 2+ pitting." [Tr. 207]. During the first week of November 2006,[2] Dr. Beeks noted that the Plaintiff's edema had "really diminished to about 1+," and Dr. Beeks found the Plaintiff was "certainly ambulatory with a normal gait." [Tr. 204].

On June 12, 2007, the Plaintiff saw Shane Roberts, M.D., a consulting physician, in relation to a workers' compensation claim. The Plaintiff's chief complaints were described as "Low back pain, pinched nerve in back, numbness in bilateral and left arm, short-term memory, brain damage because of MVA in 1985, ringing in ears." [Tr. 315]. In his physical examination, Dr. Roberts described the Plaintiff as having "brawny edema and +2 pitting in bilateral lower extremities and no claudication." [Tr. 317]. Dr. Roberts diagnosed the Plaintiff with pitting edema. [Tr. 318]. Dr. Roberts found that the Plaintiff could stand or walk with normal breaks for a total of two hours in a workday. Dr. Roberts noted that the Plaintiff could only sit with normal breaks for a total of four hours in a workday, because "sitting will increase bilateral lower extremity edema." [Tr. 318].

At the hearing before the ALJ, the Plaintiff testified, in regards to his edema, that his feet swell and that this swelling is exasperated by being on his feet "more than usual." [Tr. 26]. When asked if sitting caused swelling, the Plaintiff responded, "It's possible." [Tr. 26]. The Plaintiff explained that he will lay down and elevate his feet to keep his feet from swelling. [Tr. 26]. The Plaintiff reported that, on a bad day, he spends four to five hours lying down. [Tr. 26].

---

[2]There appear to be two copies of identical dictation notes in the record. One indicating the date of this visit was November 3, 2006, and one indicating that the visit was on November 8, 2006.

The Plaintiff's edema was also diagnosed by Eugenio F. Vargas, M.D., an examining physician, who saw the Plaintiff on February 13, 2008. Dr. Vargas found the Plaintiff was "positive for lower extremity dependent edema." [Tr. 344 (emphasis in original removed)].

In her decision, the ALJ found that the Plaintiff's edema constituted a severe impairment, pursuant to 20 C.F.R. §404.1521 and 416.921. [Tr. 12]. However, the ALJ found that the Plaintiff's subjective complaints regarding his symptoms were not consistent with the evidence of record. [Tr. 15]. The ALJ explained:

> The medical records reveal that the claimant has failed to follow-up on recommendations made by practitioners, which suggests that the symptoms may not have been as serious as has been alleged. Moreover, he has not required surgery or in-patient care for physical ailments and no treating physician has reported any limitations of function or assigned any restrictions of activity that were not addressed in the residual functional capacity. He could get up from the chair and onto the examination table without difficult[y], required no assistive devices, and had normal tiptoe, tandem, and heel gait. The undersigned finds that the claimant's subjective complaints of disabling physical limitations are disproportionate to the objective clinical and diagnostic medical evidence.

[Tr. 15].

The ALJ described the Plaintiff's visit with Dr. Roberts, at length, noting that, "[l]ow back pain, chronic with radiculopathy, pitting edema, illiterate, and carpal tunnel syndrome were diagnosed." [Tr. 13]. In her decision, the ALJ also explained that Dr. Roberts concluded that the Plaintiff could sit for four hours and stand or walk of two hours in an eight hour day. [Tr. 13]. Based upon the record as a whole, the ALJ found Dr. Roberts's opinion to be overly restrictive and afforded it no weight in her opinion. [Tr. 16].

The ALJ, instead, credited the findings and opinions Robert E. Finelli, M.D., an examining physician, [Tr. 308-14], who recommended that the Plaintiff "do the work hardening program for

8

four weeks and then try to seek gainful employment . . . ," and Rob Pearse, M.S., C.F.E., who conducted a functional assessment on behalf of Functional Assessment Systems, Inc., and did not recommend any elevating of the Plaintiff's legs or limitations on sitting, [Tr. 283-307]. [Tr. 16]. The ALJ also afforded weight to the opinions of Dr. Beeks, [Tr. 204-08], who, as stated above, found that the Plaintiff could ambulate despite his edema and did not include any limitations on the Plaintiff's ability to sit . [Tr. 16].

Based upon these opinions, the ALJ found that the Plaintiff retained the residual functional capacity to perform light work[3] with no more than occasional postural activities. [Tr. 15-16]. The ALJ did not include a requirement that the Plaintiff be allowed to elevate his feet to alleviate his edema and swelling as part of the residual functional capacity determination.

The Plaintiff argues that the ALJ's decision should be remanded because it "does not adequately address [the Plaintiff's] need to elevate his feet despite a duty to do so." [Tr. 18]. The Plaintiff notes that the ALJ must consider all allegations of physical and mental limitations and must base her residual functional capacity finding upon the evidence in the record. [Doc. 14 at 15 (citing 20 C.F.R. §§ 404.1545 and 404.945)].

The Court finds the Plaintiff's allegation of error is not well-taken. In determining a claimant's residual functional capacity, an ALJ is to consider the claimant's subjective complaints along with the medical evidence in the record. See 20 C.F.R. § 404.1545. In evaluating these forms of evidence, however, an ALJ can only accept a claimant's subjective complaints to the extent that they can reasonably be accepted as consistent with medical and other evidence. See 20 C.F.R. §

---

[3]See 20 C.F.R. § 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," along with either a "good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls." )

9

404.1529(a). In this case, the Plaintiff's subjective complaints were inconsistent with the objective evidence in the record.

Though Drs. Beeks, Roberts, and Vargas diagnosed the Plaintiff with edema, none of the physicians found the extreme limitations regarding elevation that the Plaintiff advocates. [See Tr. 318, 346]. Instead, Dr. Beeks prescribed no limitations despite diagnosing the Plaintiff's edema. [Tr. 204-08]. Dr. Roberts, the physician who gave the most restrictive assessment, found that the Plaintiff could sit for four hours despite his edema. The ALJ ultimately concluded that the physical limitations prescribed by Dr. Roberts were too restrictive [Tr. 13], but notwithstanding, even Dr. Roberts did not advocate the hours of leg elevation that the Plaintiff claims he requires. The Plaintiff has not directed the Court, nor has the Court found, any medical tests or objective evidence in the record that would support the Plaintiff's subjective complaints, and the Plaintiff's somewhat equivocal testimony alone is not entitled to controlling weight in the ALJ's disability determination.

The Plaintiff presents a related argument that the ALJ was overly reliant on the Plaintiff's reported daily activities when making her decision to discount the Plaintiff's subjective complaints. The Court has reviewed the record, and the Court finds that the Plaintiff is correct that the ALJ erred, in part, in her description of the Plaintiff's daily activities. In her decision, the ALJ stated that the Plaintiff reported that "he attends to his personal needs, helps around the house, draws, fixes cars, washes a few dishes, hunts, drives, and shops independently." [Tr. 16]. There is no testimony or evidence in the record regarding the Plaintiff going hunting, and the ALJ's statement about the Plaintiff doing so appears to be a mistake. In addition, the Plaintiff testified that he helps his nephew "fix *model* cars," an activity which is physically distinguishable from actually fixing cars. [Tr. 25 (emphasis added)].

The Court, nonetheless, finds that these inaccuracies are harmless. Despite the Plaintiff's contentions to the contrary, the ALJ clearly relied upon the evidence in the record, as a whole, in determining that the Plaintiff's testimony regarding elevating his feet would not be afforded great weight nor incorporated in the residual functional capacity determination. The ALJ relied upon the objective medical evidence in the record, including the examining and reviewing opinions of Dr. Finelli, Dr. Beeks, and the state reviewing physicians. [Tr. 16]. Further, she relied upon a wide variety of other evidence in making her credibility determination, including the many daily tasks listed above [Tr. 16], the Plaintiff's lack of follow-up treatment on his impairments [Tr. 15], and the lack of a diagnosis of such severe limitations from a treating physician [Tr. 15]. Thus, even excluding the ALJ's consideration of the Plaintiff's ability to hunt and fix cars, the ALJ's decision not to afford great weight to the Plaintiff's claim that he must elevate his legs is supported by substantial evidence.

## V. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine that the Plaintiff is capable of performing light work, with no more than occasional postural activities. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[4] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).